

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Clinton Owsley, Director
Gas Utilities Division
Railroad Commission of Texas

Overruled by O-3524-a

Dear Sir:

Opinion No. O-3524
Re: Whether Republic Natural Gas
Company must file reports
and pay tax under Articles
6056 and 6060, Revised Civil
Statutes, respectively.

We have received your letter of recent date with
the enclosure of a copy of a letter to you from the Vice-
President of the Republic Natural Gas Company outlining
the operations of the company. We quote from your letter
to us as follows:

"Republic Natural Gas Company is the suc-
cessor corporation to Saxet Gas Company, which
was dissolved in 1934. The latter company was
a public utility as defined by Article 6050 and
filed with the Railroad Commission annual re-
ports which are required under Article 6056 and
paid to the Commission the gross receipts taxes
provided for in Article 6060.

"The present operations of Republic Natural
Gas Company are briefly outlined in their letter
to this Division, dated February 24, 1941, a
copy of which we are enclosing. In addition to
the facts contained in such letter, you are ad-
vised that Republic Natural Gas Company makes
sales of gas under contract to the City of Corpus
Christi, Texas, from the Saxet Gas Field in Nueces
County. The City of Corpus Christi is the owner
of the gas pipe line, four and one-half miles
in length, from said field to the town border
station of the City of Corpus Christi, but pay-
ments of gas to the Republic Natural Gas Company

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Clinton Owsley, Page 2

are based upon the readings of the town border meter, provided that the lost and unaccounted for gas between the field station meter (in the Saxet Field) and the town border meter does not exceed 10 per cent. So far as has been determined by this Division, no adjustment has ever been made for lost and unaccounted for gas in excess of 10 per cent.

"Republic Natural Gas Company owns, operates, and maintains its gas gathering system in Nueces County, one unit of which crosses a public road in said county at a point between its wells and the place of delivery to the pipe line of the City of Corpus Christi. The pipe line referred to in this unit was constructed subsequent to the construction of said road. Another portion of the gathering system of this company crosses State Highway No. 9, which was constructed subsequent to the construction by Republic Natural Gas Company of its said line.

"Please advise us whether or not Republic Natural Gas Company is a public utility or utility within the meaning of Article 6050 insofar as the jurisdiction of the Railroad Commission of Texas is conferred in Article 6056 and 6060."

Article 6060, Revised Civil Statutes of Texas, reads as follows:

"Every gas utility subject to the provisions of this subdivision on or before the first day of January and quarterly thereafter, shall file with the Commission a statement, duly verified as true and correct by the president, treasurer or general manager if a company or corporation, or by the owner of one of them if an individual or co-partnership, showing the gross receipts of such utility for the quarter next preceding or for such portion of said quarterly period as such utility may have been conducting any business, and at such time shall pay into the State Treasury at Austin a sum equal to one-fourth of one per cent of the gross income received from all business done by it within this

Honorable Clinton Owsley, Page 3

State during said quarter."

This Article was repealed in part by Section 10 of House Bill No. 547, of the Forty-second Legislature (Acts 1931, 42nd Leg., Regular Session, Ch. 73, p. 111). Section 10 of said bill provides:

"That Article 6060 of the Revised Civil Statutes of 1925, except insofar as it imposes a license fee or tax of one-fourth of one per cent against persons owning, operating, or managing pipe lines, as provided in Section 2 of Article 6050, is hereby repealed and said fund shall be used for enforcing the provisions of Articles 6050 to 6066, inclusive."

Therefore, as Article 6060, supra, as amended, applies only to those persons owning, operating, or managing pipe lines as provided in Section 2 of Article 6050, we must now determine whether the operations of the Republic Natural Gas Company bring it within the provisions of Section 2 of Article 6050.

Section 2 of Article 6050, supra, reads as follows:

"The term 'gas utility' and 'public utility' or 'utility,' as used in this subdivision, means and includes persons, companies and private corporations, their lessees, trustees, and receivers, owning, managing, operating, leasing or controlling within this State any wells, pipe lines, plant, property, equipment, facility, franchise, license, or permit for either one or more of the following kinds of business:

". . .

"2. Owning or operating or managing a pipe line for the transportation or carriage of natural gas, whether for public hire or not, if any part of the right of way for said line has been acquired or may hereafter be acquired by the exercise of the right of eminent domain; or if said line or any part thereof is laid upon, over or under any public road or highway of this State, or street or alley of any municipality, or the right of way of any railroad or other public

Honorable Clinton Owsley, Page 4

utility; including also any natural gas utility
authorized by law to exercise the right of em-
inent domain." (Emphasis ours)

You state in your letter that the Republic Nat-
ural Gas Company owns, operates and maintains its pipe line
gathering system, one unit of which crosses a public road
in Nueces County at a point between its wells and the place
of delivery on its lease to the pipe line of the City of
Corpus Christi. This unit was constructed subsequent to
the construction of the road. Another unit crosses a State
highway which was constructed subsequent to the construction
of the pipe line.

From the underscored part of the above quoted
statute, it is apparent that these operations bring the
company within the terms of Section 2 if the gathering
system is a pipe line as used in said section.

The case of Williams v. State, 109 S. W. (2d) 489,
involved the offense of unlawfully tapping a pipe line under
Article 1111b of Vernon's Penal Code. The Court of Criminal
Appeals had the following to say of the term pipe line:

". . . The term pipe line has a well-
understood meaning and is commonly understood
as a means by which water, gas, oil, or other
liquids are conveyed from one place to another."

Without doubt this definition would cover the
gathering system. However, we are convinced from the very
wording of the statute itself that it was the legislative
intent that gathering system pipe lines were to be included.
The statute provides specifically "whether for public hire
or not." This clearly indicates that private pipe lines are
included if the other conditions are present.

The instant situation is clearly distinguishable
from that involved in the case of Col-Tex Refining Co. v.
Hart, et al., 144 S. W. (2d) 909 (W.E. Ref.). In that case
the company sought an injunction against certain officials
to restrain them from collecting an intangible tax imposed
by virtue of Article 7105, Vernon's Annotated Civil Statutes.
In connection with its refinery the company had a pipe line

Honorable Clinton Owsley, Page 5

which it used exclusively to transport oil that it pur-
chased from various producers to the refinery. The only
question to be decided was whether Article 7105 applied
to this type of pipe line.

Article 7105 reads in part as follows:

"Each incorporated railroad company, ferry
company, bridge company, turnpike or toll com-
pany, oil pipe line company, and all common
carrier pipe line companies of every character
whatsoever, engaged in the transportation of
oil, doing business wholly or in part within
this State, whether incorporated under the laws
of this State, or of any other State, territory,
or foreign country, and every other individual,
company, corporation or association doing busi-
ness of the same character in this State, in
addition to the ad valorem taxes on tangible
properties which are or may be imposed upon them
respectively, by law, shall pay an annual tax
to the State, beginning with the first day of
January of each year, on their intangible assets
and property, . . ."(Emphasis ours)

The court found that the company was neither an
incorporated oil pipe line company nor a common carrier oil
pipe line company, and that, therefore, for the tax to be
proper the company would have to be "doing business of the
same character." The court held since an oil pipe line
company and a common carrier oil pipe line company would
carry on the transportation of oil as a business and pre-
sumptively for hire that the transportation of its own oil
by the company to its refinery was not business of the same
character. Hence, the company was not liable for the tax.
We quote from the opinion of the court as follows:

". . . In the first place, every such 'in-
dividual, corporation,' etc., would have to be
engaged in business within the State and that
business would have to be of the same charac-
ter as that being done by the incorporated pipe
line company, carrier, etc., that is, engaged
in the transporation of oil as a business, and
presumptively for hire. . .. In the use it made
of its gathering system the refinery in no sense

of the word was doing the 'same character of
business' as that referred to by such language
in Art. 7105. . . "

This argument does not apply to the present
situation at all since Section 2 of Article 6050 express-
ly provides "whether for public hire or not," which clear-
ly indicates that private pipe lines are to be included
within the terms of said section.

We quote further from the opinion in the Col-
Tex case:

"Further, wherever the question of purely
private pipe lines, limited in use to refineries
of their owners, have been dealt with by legis-
lation, such pipe lines have been excepted from
the operation of the law in its primary purpose
and object. In other words, the legislation is
specific that such private pipe lines were never
included in its terms. Evidently the Legisla-
ture had in mind Arts. 6018 and 1503 when it
amended Art. 7105. . ."

Such is not the case here. Instead of excepting
private pipe lines, the Legislature by inserting "whether
for public hire or not" clearly indicated that private pipe
lines were to be included.

We deem it proper to add at this point that we
do not regard the case of Humble Oil & Refining Company,
et al v. Railroad Commission of Texas, et al, 133 Tex. 175,
128 S. W. (2d) 9, as controlling or even applicable to the
situation at hand. We quote from the opinion of the court
as follows:

". . . In other words, for this order to
be sustained, it must be because our gas util-
ity statutes authorize the commission to fix
the price at which a mere producer thereof must
sell his product to a public gas utility, even
though such product is sold by the producer at
the point of origin, and even though such pro-
ducer does not transport such gas on, over, or
across the public highways of this State, or

Honorable Clinton Owsley, Page 7

exercise the right of eminent domain in regard
thereto, or sell the same, or offer it for sale,
to the public generally; but merely sells, under
contract, to one purchaser, who is a public gas
utility. . ." (Emphasis ours)

Thus, it is seen that the court was dealing with
the jurisdiction of the Railroad Commission to fix rates
where the gas was not transported "on, over, or across
the public highways of this State." Such are not the facts
here.

It follows from what we have said the operations
of the Republic Natural Gas Company bring it within the pro-
visions of Section 8 of Article 6050. The company is, there-
fore, liable for the tax imposed by Article 6060.

Article 6056, Revised Civil Statutes of Texas, reads
as follows:

"The Commission may require of all persons
or corporations operating, owning or controlling
such gas pipe lines sworn reports of the total
quantities of gas distributed by such pipe lines
and of that held by them in storage, and also of
their source of supply, the number of wells from
which they draw their supply, the amount of pres-
sure maintained, and the amount and character
and description of the equipment employed, and
such other matters pertaining to the business
as the Commission may deem pertinent."

Under this statute the company must also make the
annual reports required by the Commission.

In view of the foregoing it is the considered opin-
ion of this department that the Republic Natural Gas Company
must pay the tax imposed by Article 6060, R. C. S., and must
file the annual reports required by the Railroad Commission
under Article 6056, R. C. S.

APPROVED JUL 11, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

GWS:LM

Very truly yours

ATTORNEY GENERAL OF TEXAS

By James R Hart
James P. Hart
Assistant

By George W. Sparks
George W. Sparks

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN